UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GERALD ARICH | : | CIVIL ACTION NO. 3:02CV00958 |
| | : | (WWE) |
| | : | |
| V. | : | |
| | : | |
| METRO-NORTH RAILROAD | : | NOVEMBER 12, 2004 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO PRECLUDE PLAINTIFF'S EXPERT**

The undersigned Defendant, Metro-North Railroad, hereby responds to "Plaintiff's Supplemental Memorandum in Opposition to Metro North's Motion to Preclude Experts" recently filed on November 5, 2004, four days after the November 1, 2004 Daubert Hearing before Judge Fitzsimmons.

**I.    INTRODUCTION**

The plaintiff's Supplemental Memorandum and the accompanying report submitted by Dr. Cullen should not be considered by the Court for a number of reasons. First, Dr. Cullen's new November 5, 2004 report, in which he provides an entirely new and different opinion which was not addressed at the recent Daubert hearing, is hearsay for which there is no exception. Next, the plaintiff's claim that it was the defendant's failure to disclose certain facts and information that caused the need for Dr. Cullen's "new" theory of causation in his November 5, 2004 report is completely groundless. Additionally, Dr. Cullen's "new" or "revised" theory of causation only

demonstrates the tenuous nature of his prior theory of causation based upon his alleged use of the differential diagnosis methodology. Finally, this "new" theory that Dr. Cullen now attempts to submit to this Court is just as unreliable as his old theory, and both theories are thereby inadmissible under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993).

## II.   FACTS & PLEADINGS

### 1)   Daubert Motion & Hearing

On June 30, 2004, the defendant filed a Motion to Preclude Plaintiff's Experts, Mark Cullen, M.D., and Mridu Gullati, M.D., and a Memorandum of Law in Support of that Motion. It is the defendant's position that these proffered experts should be excluded because their opinions regarding causation of the plaintiff's condition, bronchiolectasis in the right lung and a resulting lung nodule, are inadmissible under Federal Rule of Evidence 702 and <u>Daubert</u>. On July 30, 2004, the plaintiff filed a Memorandum in Opposition to Metro North's Motion to Preclude Experts. The plaintiff's Memorandum addressed the issue of the size of the bronchiole and dust particles.

On November 1, 2004, the parties appeared before Judge Fitzsimmons for a <u>Daubert</u> hearing on the Defendant's Motion to Preclude. The plaintiff's proffered expert, Dr. Cullen, testified first and was subject to direct examination by the plaintiff's attorney and cross examination by the

defendant's attorney. Specifically, Dr. Cullen testified as to his opinion that fire extinguisher dust caused the plaintiff's bronchiolectasis and nodule. He testified that this was a "biologically plausible scenario" because the dust particles were the "right size" to cause obstruction of the bronchiole. Specifically, he testified that the bronchiole was "one micron or less" and that the dust particles that became wedged therein causing an obstruction were five microns or less. As evidenced by his own testimony, it was the very fact that this theory was "biologically plausible" that Dr. Cullen placed the fire extinguisher dust inhalation at the top of his list of possible causes in his application of the "differential diagnosis" methodology.

During Dr. Cullen's cross examination, the true and actual size of the bronchiole was brought out. At this point, it became evident that Dr. Cullen's alleged "biologically plausible scenario" on which he based his "differential diagnosis" was fundamentally flawed given his miscalculation of bronchiole diameter size. When apprised of the fact that STEADMAN'S MEDICAL DICTIONARY 243 (26th ed. 1995) documented the average bronchiole diameter at .5 millimeters, which equals 500 microns, Dr. Cullen insisted that this dictionary was simply wrong. When presented with FRASER & PARE'S DIAGNOSIS OF DISEASES OF THE CHEST 4 (4th ed., vol. 1, 1999) which documented bronchiole diameter of .6 millimeters, or 600 microns, Dr. Cullen finally admitted that it was he who was incorrect about the size a bronchiole.

**2)** **Expert Report & Depositions**

During discovery prior to the Daubert hearing, the defendant was provided with Dr. Cullen's and Dr. Gullati's joint report dated October 10, 2003. In this report, they opine that the inhalation of the fire extinguisher dust caused the plaintiff's bronchiolectasis and nodules despite the lack of medical literature supporting this theory. Their "novel" theory of causation was based strictly upon upon the temporal relationship between the inhalation incident and the nodules, and the "lack of any viable alternative explanation" for the nodules. They claimed to have relied upon the "differential diagnosis" methodology in support of their novel conclusion.

Thereafter, the defendant deposed Dr. Gullati on February 3, 2004. The plaintiff deposed Dr. Maxfield on February 26, 2004, and the defendant deposed Dr. Cullen on March 1, 2004. As is evidenced by Dr. Maxfield's deposition testimony, the question of the size and diameter of bronchioles and dust particles was explored at length by plaintiff's counsel. The issue of bronchiole and dust particle size was also explored by defense counsel during Dr. Cullen's deposition testimony. In response to defense counsel's inquiry into the diameter size of the bronchiole, Dr. Cullen testified "nothing gets through them that is much bigger than five microns." (Cullen Depo. Trans., p. 9). The size issue is not new to this case.

### 3) "New" Theory of Causation

After the <u>Daubert</u> hearing, on November 7, 2004, counsel for the defendant received the Plaintiff's Supplemental Motion in which the plaintiff attempts to "supplement" Dr. Cullen's opinion regarding causation with a one page report. Dr. Cullen's November 5, 2004 report does not merely "supplement" the theory to which he had just testified under oath, but instead it attempts to change his theory of causation entirely to a "wind gust" theory. This only re-emphasizes the fact that Dr. Cullen's methodology and opinion do not pass muster under <u>Daubert</u>, and should thereby be excluded.

### III. ARGUMENT

### 1) Dr. Cullen's New Report is Inadmissible Hearsay

Dr. Cullen's November 5, 2004 report should not be considered by the Court because it is nothing more than hearsay for which there is no exception under the law. <u>See</u> FED. R. EVID. 802-804. There is no dispute that it is being offered for the truth of the statements contained therein, namely, Dr. Cullen's new opinion. There is no hearsay exception allowing an expert or doctor's report into court. Moreover, if the Court were to consider this new opinion, it would not be subject to the scrutiny and cross examination it deserves. This inadmissible hearsay does not warrant consideration particularly under the circumstances presented here. This proffered expert's old

opinion was shown to be fundamentally flawed, and he should not now be allowed to salvage his opinion, after the hearing, with inadmissible evidence.

### 2) At the <u>Daubert</u> Hearing, the Defendant Did Not Raise New Facts and Information That Had Not Been Previously Identified

As is outlined immediately above in the "Facts & Pleadings" Section of this Memorandum, the plaintiff's current claim that at the <u>Daubert</u> hearing, Dr. Maxfield "relied on certain facts and information that had not been identified in Dr. Maxfield's Rule 26(a) written report and that had not been mentioned at his deposition or the deposition of Dr. Cullen" is silly. The issue of bronchiole and dust particle size and whether dust particles are capable of causing an obstruction have been a running theme throughout this case. Indeed, it was at the heart of Dr. Cullen's old theory.

A review of the record going back to Dr.'s Cullen and Gullati's October 2003 report, through discovery depositions, <u>Daubert</u> briefs, and throughout the <u>Daubert</u> hearing testimony demonstrates that it was the plaintiff who not only raised the issue of the size of the bronchioles and the dust particles, but *relied* on it to support his theory. Dr. Cullen addressed this issue at his deposition. (Cullen Depo. Trans., p. 9). In addition, the plaintiff's Memorandum in Opposition to Defendant's Motion to Preclude noted, "[t]he bronchioles are the smallest division of the lung structures and nothing larger than five microns gets through them." (Plaintiff's July 30, 2004 Memo., p. 8). The

plaintiff also stated, "[b]ronchioles are located in the lower lobe of the lung and are one of the narrowest structures in the lung, with an opening of only .5 [sic] microns.  By definition, a foreign object capable of blocking a bronchiole must be extremely small." Id. at 10.   The plaintiff further stated, "[a]ll that is required is that the foreign body be of a size capable of fitting into and plugging the opening of a bronchiole." Id.

The only "new" information that Dr. Cullen was apprised of at the Daubert hearing was the fact that his estimation of the diameter size of a bronchiole was wrong by 100 fold.  Any information regarding the diameter of a bronchiole as stated in multiple medical texts cannot now be categorized by the plaintiff and Dr. Cullen as "new" information of which Dr. Cullen had not been previously aware.  Dr. Cullen's Curriculum Vitae and his foundational testimony with respect to his qualifications and credentials as a medical doctor and academic instructor associated with Yale University speaks for itself, but these credentials do not automatically mean he is correct.  What is most striking is that given this doctor's background, it is disingenuous for plaintiff's counsel and Dr. Cullen to now represent to the Court that information regarding bronchiole size is "new" to Dr. Cullen.  If this is truly "new" information to Dr. Cullen, this should only further emphasize to the court that this doctor's opinions are unreliable and inadmissible.

**3)  Dr. Cullen's "New" Theory of Causation Warrants No Consideration Because it is Unsubstantiated and Just as Unreliable as his "Old" Theory of Causation; Neither Opinion is Admissible Under Rule 702 or <u>Daubert</u>**

Dr. Cullen's November 5, 2004 report and the new opinion contained therein only underscores the fact that all of his opinion testimony should be excluded because it does not meet Rule 702 or <u>Daubert</u> requirements. It is clear that his old theory was based upon faulty presumptions because it has been now proven that this theory is "biologically *implausible.*" A less than five micron dust particle cannot obstruct a bronchiole that is 500 microns in diameter. Dr. Cullen failed in "ruling in" the dust particle as a possible cause. Thus, he needed a new "theory of causation" to support his predetermined conclusion. Dr. Cullen's new and also novel theory of causation is that a "large dust particle" of some indeterminate size, but presumably larger than 500 microns, was driven by a sudden wind gust of high velocity down the plaintiff's throat.

Even assuming the Court were to consider Dr. Cullen's new report, the opinion in the report does not satisfy Rule 702 or <u>Daubert</u> and is thereby inadmissible. Dr. Cullen fails to provide any reference to what literature, deposition testimony, facts, medical records, or anything he "reviewed" for his "own edification" in formulating this new opinion. (Cullen's Nov. 5, 2004 Report).

Dr. Cullen's old and new theories of causation are the exact type of expert opinion testimony that Rule 702 and <u>Daubert</u> were designed to exclude. It is nothing more than circular reasoning and

is result oriented. Originally, Dr. Cullen reached a conclusion on October 10, 2003 regarding causation – that fire extinguisher dust is five microns or less and became wedged in a smaller bronchiole. That theory was shown to be flawed because of Dr. Cullen's "misapprehension" (as he describes it in his November 5, 2004 report) about the diameter of a bronchiole and the particle size necessary to cause an obstruction. Upon realizing that the theory which he has held for the past year was flawed, Dr. Cullen was forced to come up with a new theory to support the conclusion that he had already reached.

      Dr. Cullen's circular reasoning is unreliable and inadmissible. In <u>Amorgianos v. Nattional Railroad Passenger Corp.</u>, 303 F.3d 256 (2d Cir. 2002), the Second Circuit Court of Appeals stated that to warrant admissibility, "[i]t is critical that an expert's analysis be reliable at every step." The court further noted "the Daubert 'requirement that the expert testify to scientific knowledge – conclusions supported by good grounds for each step in the analysis – means that any step that renders the analysis unreliable under Daubert factors renders the expert's testimony inadmissible. <u>Id</u>. (citing <u>In re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 745 (3d Cir. 1994)). In <u>Mancuso v. Consolidated Edison</u>, 967 F.Supp 1437 (S.D.N.Y. 1997) *aff'd in relevant part,* 216 F.3d 1072 (2d Cir. 2000) *reported at* 2000 U.S. App. Lexis 12487 (2d Cir. 2000), the court excluded the plaintiff's medical expert noting, "it is improper for an expert to presume that the plaintiff 'must have somehow

been exposed to a high enough dose to exceed the threshold [necessary to cause illness], thereby justifying his initial diagnosis.  This is circular reasoning.'"  Id. at. 1451 (citing O'Conner, 807 F.Supp. at 1396; Cavallo, 892 F.Supp. at 764, n.12; Claar v. Burlington R.R. Co., 29 F.3d. 499, 502-03 (9th Cir.  1994)).

      Dr. Cullen's new theory actually raises a lot more questions than it answers.  What exactly were the "circumstances of exposure" Dr. Cullen was taking into account here?  Was the dust in the fire extinguisher of the size imagined by Dr. Cullen? What was the size of the large particle?  How large is a 500 micron particle?  Is it capable of floating in the air?  What was the velocity of this alleged wind gust of which Dr. Cullen knows nothing about?  How does such a large particle actually go down an individuals nose and throat and all the way down to the bronchioles?  Does the velocity of such a wind gust not slow after it hits the nose, throat, and upper airways?  What is the "usual exposure situation" to which he is comparing this "high speed" exposure?

      Dr. Cullen does not answer one of these questions for the Court.  He fails to point to any text, research, testimony, facts, or evidence supporting the new wind gust theory.  He has no idea of the size of the dust particles in the fire extinguisher.  Under his old theory, he assumed the particle was of a certain size and testified at his deposition as follows: "[i]t needs to have been small enough to wedge itself quite deep in the airway system.  So I'm guessing a particle in the range of five

microns." (Cullen Depo. Trans., p. 21). Dr. Cullen seems to be making it up as he goes along, changing his theory to fit his conclusion.

In his new report, Dr. Cullen compares the "circumstance of exposure" to that of a sandstorm. This is contrary to his deposition testimony where he testified that had the circumstance of exposure been akin to a sandstorm, the plaintiff would have either cleared the large particle or developed bronchiectasis (obstruction in the bronchi), not bronchiolectasis (obstruction in the smaller bronchiole). At his deposition, Dr. Cullen testified as follows:

> Q. Do you know why his bronchiolectasis was not bronchiectasis? Can you explain why it was one and not the other?
> A. I assume it has to do with particle sizes and that's why I was disappointed that the material safety data sheets didn't talk about the range of the possible particle sizes that may occur during this nozzling process, which is a fairly high pressure aerosol that comes off these machines. But I suspect, for example, compared to a sandstorm in which most of the particles are quite large or the kind of soil inhalations that occur in excavation, mining activities, those kinds of things, that the dust, the particles to which he [the plaintiff] was exposed were actually a bit smaller.
> Q. Smaller than that?
> A. Right.
> Q. Okay. Because if they were a bit larger than that, you would expect to see bronchiectasis?
> A. Or it to be cleared or just to have them cleared, which is the normal thing we all do -- we are inhaling particles all the time, but we clear them.
> (Cullen's Depo. Trans., p. 16)

Not only does Dr. Cullen fail to provide any guidance to the Court in support of his new theory, he also fails to provide an explanation as to why it is inconsistent with his prior testimony.

## IV.  CONCLUSION

Dr. Cullen's new report is inadmissible hearsay that does not warrant the Court's consideration. Moreover, Dr. Cullen's new report does not satisfy Federal Rule of Evidence 702 or <u>Daubert</u> just as his old opinion failed to do; therefore, neither is admissible.

THE DEFENDANT,
METRO-NORTH RAILROAD


By:_____
Charles A. Deluca, Esq.
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street, P.O. Box 3057
Stamford, CT   06905
Juris No. 52525
Phone No. 203-357-9200

## CERTIFICATE OF SERVICE

      I hereby certify that on November 12, 2004, a copy of the above was mailed to the following counsel and pro se parties of record:

Charles C. Goetsch, Esq.
Cahill, Goetsch & Maurer, PC
43 Trumbull Street
New Haven, CT 06511-1059
Attorney for Plaintiff, Gerald Arich

 

_____
Charles A. Deluca, Esq.