UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gerald Arich<br><br>Plaintiff<br><br>VS.<br><br>Metro-North Railroad Company<br><br>Defendant | Civil Action<br>No: 3:02CV00958(WWE)<br><br><br>November 17, 2004 |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMO IN OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT

Metro-North's argument that Dr. Cullen's report is hearsay is besides the point. An expert's testimony at trial supersedes any written reports, and such reports are not offered as exhibits at trial. The issue here, in the context of a *Daubert* motion, is whether an expert will be barred from testifying at trial because he did not use a reliable methodology.

This case raises the question: is an expert ever entitled to supplement his opinion after an error or misapprehension of fact is brought to his attention? Common sense dictates that as long as the expert is still using a reliable methodology in a reliable way, such a correction should not disqualify him from testifying. Certainly it may affect the juror's assessment of his credibility or the weight they place on his opinion, but it should not necessarily bar him from testifying.

Here, the question of the size or measurement of the bronchiole opening was asked of both experts during their depositions. Dr. Cullen believed them to be in the 5 micron range. Dr. Maxfield did not know the size:

> Q. How small are the bronchioloes as far as the opening that the air enters?
>
> A. I can't tell exactly.
>
> Q. Is it fair to say it would be measured in terms of microns, as opposed to millimeter?
>
> A. I don't know. I can't speculate. I've never measured one.

Dr. Maxfield depo. trs. at p.9.

> Q. A foreign object would have to be small enough so that it could be breathed in or aspirated into the lung: is that correct?
>
> A. Yes.
> Q. And it would have to be big enough to obstruct the normal opening of the bronchiole tube: is that correct?
>
> A. Yes.
>
> Q. You can't tell us the actual size or range of what such a foreign object would be as far as microns is concerned?
>
> Q. No. Because the airway, I mean, it's like branches of a tree. Your trachea starts out at about a centimeter to probably centimeter and a half of diameter, and the airway get smaller and smaller and smaller out the air sac. There's no single diameter that represents the diameter of a bronchus. It gets smaller and smaller as you get further out the lung.

Id. at p. 19

> Q. Well, then how large or small would the object have to be or could be?
>
> A. It has to be big enough -- in this report nobody measured the bronchus, so I can't tell you. It would have to be big enough to fill the bronchus that was involved in this process.
>
> Q. But you can't tell us how big or small that is: isn't that right?

A. I can't tell you exactly the size of the bronchus from this, no.

Id. at pgs. 49-50.

Dr. Cullen did repeatedly confirm during his deposition that sandstorm type exposure is an established cause of bronchiectasis. Dr. Cullen depo. trs. at pgs. 14-17. As Dr. Cullen noted, "It's the depth within the lung that was unusual in this case." Id. at p.14.

When his misapprehension as to the diameter of a bronchiole was brought to his attention, Dr. Cullen supplemented his written report to take that into account. The correction of his misapprehension did not change Cullen's ultimate conclusion as to the cause of Mr. Arich's condition. Nor did it change the way in which Dr. Cullen applied the differential diagnosis methodology. From Mr. Arich's description of what happened, Cullen is aware of the nature of the wind borne exposure when the cab door was opened, creating a strong cross-wind that suddenly blew the material up into his face. And a sandstorm type of sudden strong wind exposure is an established cause that can be ruled in.

Metro-North and Dr. Maxfield do not dispute the reliability of the differential diagnosis methodology. Metro-North has not demonstrated that Dr. Cullen's application of that methodology to Arich is unreliable. Accordingly, the plaintiff respectfully requests that Metro-North's Motion be denied and the trial go forward.

FOR THE PLAINTIFF,

BY _/s/ Charles C. Goetsch_
Charles C. Goetsch (CT00776)
CAHILL & GOETSCH, P.C.
43 Trumbull Street
New Haven, Connecticut 06511
(203) 777-1000

3

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid to:

Charles A. Deluca, Esq.
Ryan Ryan Johnson & Deluca
80 Fourth Street, P.O. Box 3057
Stamford, CT 06905

on this 17th day of November, 2004.

Charles C. Goetsch